UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATERA HAWKINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TRANSDEV SERVICES, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-01259-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO REMAND**<br><br>Re: Dkt. Nos. 14, 20 |

Defendants' motion to dismiss (ECF 20) and Plaintiff's motion to remand (ECF 14) were heard before this Court on September 20, 2023. Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion to dismiss and **DENIES** Plaintiff's motion to remand, for the following reasons.

**BACKGROUND**

The Complaint makes the following allegations, which the Court accepts as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court similarly accepts the allegations as true for purposes of the motion to remand, a facial challenge to subject matter jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

Plaintiff Katera Hawkins worked for Defendant Transdev Services, Inc., as a driver. Her job duties included driving persons with disabilities to their appointments. Defendant Transdev Services, Inc. ("Transdev") is a corporation organized under the laws of Maryland with its principal place of business in Illinois. The company provides transportation services in California. Plaintiff additionally sues several individuals for their respective roles in the employment

discrimination she alleges. The individual Defendants include Laura Hendricks, Ted Koerth, Mathieu Le Bourhis, and Mary McLain. McLain, the only individual Defendant left in the case at this stage, is a California citizen who served as a General Manager for Transdev and directly supervised Hawkins during her employment.

**A.    Factual History**

On or around November 25, 2019, Defendant Transdev hired Hawkins as a driver. On Hawkins's second day of employment, she was sent to Defendant's doctor for an evaluation, and Transdev learned of her disability, diabetes, as a result of the evaluation.

In or around February or March of 2020, Hawkins received her commercial driver's license ("CDL"). Transdev typically gives an employee a route and a schedule after the employee receives his or her CDL. However, on the date Hawkins was supposed to receive her schedule, she had a family emergency and did not receive her schedule. Transdev instead sent Hawkins inconsistent and frequently changing daily schedules while her coworkers received consistent work schedules. Further, Hawkins's assigned days off were Wednesday and Friday. In contrast, all of her coworkers were assigned consecutive days off. The coworkers with consistent schedules were younger than her.

In or around March or April of 2020, Hawkins began to regularly request a set schedule from Defendants. Hawkins informed Defendants that, as an accommodation for her disability, she needed a consistent schedule with consecutive days off to get adequate rest.

Following Hawkins's request of a regular schedule, including her requests for reasonable accommodation in the form of consecutive days off, in or around April or May of 2020, Hawkins began to receive disciplinary write ups at the instruction of McLain. Such write ups were issued for alleged mistakes made in Hawkins's pre-trip paperwork, forms drivers filled out at the beginning and end of their shifts. Hawkins had not been provided proper training in this regard, however, and she informed a supervisor of the training deficiency. Further, many of Hawkins's fellow drivers also had difficulty with their pre-trip paperwork. Hawkins believes that she was written up in retaliation for her requests for reasonable accommodation and complaints regarding her schedule.

On or around July 10, 2020, after the outbreak of the COVID-19 pandemic, Hawkins was placed on a 10-day medical leave by her doctor because her diabetes put her at high-risk for severe COVID-19 outcomes. Hawkins was due to return to work on or around July 20, 2020, but on July 16, 2020, her doctor extended her leave to August 16, 2020. On August 17, 2020, Hawkins's doctor extended her leave to September 20, 2020. With the original leave and each extension, Hawkins provided Transdev with notes from her doctor.

On August 25, 2020, Transdev's human resources representative sent Hawkins a text message stating, "[Plaintiff] has not worked long enough to be eligible for protected leave and [has] not been approved [for] leave." Hawkins was told that she had a "final opportunity" to contact McLain on September 1, 2020, for an "interactive interview to determine if [Plaintiff's] absence qualifies for any approval status or if [Plaintiff and Defendant] will need to separate based upon the continued absence." On September 1, 2020, Hawkins telephoned McLain as instructed. During this conversation, McLain told Hawkins that if Hawkins did not return to work that day, her position would not be held. Hawkins did not return to work that day based on her doctor's instructions.

Hawkins was terminated on September 1, 2020. At the time, she was forty-three (43) years old. Hawkins alleges that Transdev terminated her employment based on her disability, her requests for reasonable accommodation, and her good faith complaints, among other things.

**B.     Procedural History**

Hawkins originated this lawsuit in California Superior Court for the County of San Mateo on February 14, 2023. Hawkins claims that Transdev terminated her employment due to her age and in retaliation for her requests for a consistent schedule, which she contends was necessary due to her alleged disability (diabetes), and that Transdev failed to accommodate her requests for medical leave. Compl. ¶¶ 27-34.

Defendants removed the case to this Court on March 17, 2023. ECF 1. Defendants premised removal on federal question jurisdiction averring that Hawkins's wage and hour claims implicate collective bargaining agreements and federal statutes. Defendants also asserted that McLain is a "sham defendant" and that this Court has diversity jurisdiction over the matter. *Id.*

1    Transdev filed its partial Motion to Dismiss on March 24, 2023.  ECF 7.  Transdev filed a partial

2    answer at the same time, responding to those causes of action for which Transdev did not seek

3    dismissal.  ECF 6.  Hawkins filed the Motion to Remand on April 7, 2023.  ECF 14.

4           The parties then stipulated to dismiss several of Plaintiff's causes of action, including the

5    First Cause of Action (failure to pay all wages), Second Cause of Action (waiting time penalties),

6    Third Cause of Action (failure to provide accurate itemized wage statements), Fourth Cause of

7    Action (failure to pay wages for rest break periods), and Fifth Cause of Action (failure to pay

8    wages for meal break periods).  ECF 19.  The parties additionally stipulated to dismiss Defendants

9    Laura Hendricks, Ted Koerth, and Mathieu Le Bourhis.  *Id.*  As made clear in the stipulation,

10   Plaintiff continues to oppose the Motion to Dismiss as to her Eighth and Fourteenth causes of

11   action (work environment harassment and unfair and unlawful business practices).  *Id.*

## DISCUSSION

13          Plaintiff moves for remand on the basis that federal jurisdiction does not exist following

14   the stipulated dismissal of federal causes of action as well as the inclusion of McLain, a non-

15   diverse Defendant, in the action.  ECF 14.  Separately, Defendants move to dismiss the sole

16   remaining cause of action advanced against McLain for failure to state a claim.  ECF 20.

17          The Court would typically address jurisdictional issues presented in a motion to remand

18   before reaching the motion to dismiss.  *See generally Grancare, LLC v. Thrower by & through*

19   *Mills*, 889 F.3d 543, 549 (9th Cir. 2018).  However, the two motions at bar rest on a shared issue:

20   whether Hawkins states a claim against the sole remaining non-diverse Defendant, McLain.  The

21   Court therefore analyzes the merits of the claims against McLain first, as their viability informs

22   the Motion to Remand.

23   **A.     Motion to Dismiss**

24          Defendant originally moved for an order dismissing the First, Second, Third, Fourth, Fifth,

25   Eighth and Fourteenth Causes of Action.  After the parties' stipulated dismissal, Plaintiff's only

26   remaining claims are the Eighth and Fourteenth Causes of Action.  Defendants move to dismiss

4

the Eighth Cause of Action,[1] but they do not request dismissal of the Fourteenth Cause of Action, the unfair competition claim, to the extent that it is predicated on Plaintiff's discrimination, retaliation, or wrongful termination claims. *See* Defs.' Reply Br. at 1 n.1 (ECF 21 at 2).

### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint may be dismissed if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A complaint is facially plausible where plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

### 2. Eighth Cause of Action: Hostile Work Environment

Under California's Fair Employment and Housing Act ("FEHA"), it is unlawful for an employee to be harassed by either an employer or a fellow employee because of physical disability, age, or gender. Cal. Gov't Code § 12940(j). Harassment "refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009). Harassment "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996). While "commonly necessary personnel management actions, such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations . . . do not come within the meaning of harassment," *Reno v. Baird*, 18

---

[1] Plaintiff's Eighth Cause of Action is for "work environment harassment." At the hearing, counsel for Plaintiff clarified that this is a claim for hostile work environment.

1    Cal. 4th 640, 646-47 (1998) (citations omitted), the California Supreme Court has made clear that
2    "some official employment actions" can support a harassment cause of action because they "can
3    also have a secondary effect of communicating a hostile message," *Roby*, 47 Cal. 4th at 709.  Said
4    another way, personnel-related actions do not inherently constitute unlawful harassment because
5    they are normal parts of the employment relationship that cannot be avoided, and a claim for
6    harassment only rests where such actions communicate a demeaning message and are sufficiently
7    "severe or pervasive as to alter the working conditions."  *Id.* at 708 (citations omitted).
8           Hawkins asserts a single cause of action against California-resident McLain: her Eighth
9    Cause of Action for "work environment harassment."  Compl. ¶¶ 144-58 (ECF 1 at 41).  In
10   support of her claim, Hawkins asserts that McLain engaged in unlawful harassment by (1) failing
11   to provide Hawkins with a consistent schedule and consecutive days off (Compl. ¶ 28), (2) issuing
12   write-ups for paperwork errors (Compl. ¶ 30), (3) requiring Hawkins to return to work and
13   informing Hawkins that absences would be counted as "points" against her (Compl. ¶¶ 31-33), and
14   (4) terminating her employment (Compl. ¶ 34).  *See also* Pl.'s Opp. Br. at 10-11 (ECF 15 at 10-
15   11).  Defendant avers that all the alleged actions amount to non-actionable personnel management
16   conduct and thus cannot constitute a harassment cause of action.
17          Here, the employment-related allegations against McLain do not evince conduct so severe
18   or pervasive as to alter Hawkins's working conditions.  McLain's personnel-related actions such
19   as disciplinary write-ups, do not, in themselves or combined with the irregular work schedules,
20   constitute harassing behavior.  *Reno*, 18 Cal. 4th at 646-47.  Hawkins's allegations of harassment
21   especially fall short because the allegations do not describe any bias, animus, or offensive message
22   communicated to her.  This deficiency distinguishes the facts here from *Roby* because the
23   personnel management actions implicated here did not contribute to a hostile message that the
24   employer expressed to Hawkins in other, more explicit ways.  *Cf. Roby*, 47 Cal. 4th at 763.
25   Hawkins fails to identify any separate hostile message, and she fails to allege any hostile conduct
26   or comments that are not personnel related.  Hawkins's conclusory characterization of Defendants'
27   conduct as "hostile" does not alter the reality that she does not plead anything beyond personnel
28   management conduct, e.g., scheduling, write-ups, and termination.  Even if Defendants' actions

communicated hostility, Hawkins fails to allege that any purported harassment was based on Hawkins's age or disability. Hawkins's complaint includes allegations of routine personnel-related conduct, not actionable harassment, and she accordingly fails to state a claim for harassment based on hostile work environment.

### B. Motion to Remand

Hawkins moves to remand the case to state court on the basis that federal jurisdiction does not exist. She contends that the Court lacks diversity jurisdiction because both Hawkins and McLain are California citizens. Defendants argue that the joinder of McLain should be disregarded as fraudulent.

#### 1. Legal Standard

Diversity jurisdiction "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Id.*

A defendant may establish fraudulent joinder by demonstrating that the plaintiff cannot state a claim against the resident defendant in state court. *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1044). That assessment requires the court to analyze whether the operative complaint states a claim against the resident defendant. *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003). If the complaint fails to state a claim against the resident defendant, and that failure is "obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.* at 826 (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A defendant is not fraudulently joined, however, merely because the operative complaint fails as against them. *See Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009). To establish fraudulent joinder, the defendant must show that a state court would not grant leave to amend to correct the pleading deficiencies. *Id.* at 1159. "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (emphasis in original) (quoting *Hunter*, 582 F.3d at 1046).

**2.      Fraudulent Joinder of Sham Defendant**

Hawkins is a citizen of California, McLain is a citizen of California, and Transdev is a corporate citizen of both Maryland and Illinois.  Because Hawkins and McLain are citizens of California, Hawkins seeks to remand this action to state court on the basis that the parties are not diverse under Title 28 U.S.C. § 1332.  Defendants contend that removal should stand – federal jurisdiction exists because the citizenship of McLain, a sham defendant, should be disregarded in the assessment of diversity jurisdiction.

The Court concluded above that Hawkins has failed to state a claim for harassment against McLain.  The analysis thus shifts to whether Hawkins can possibly state a cause of action against McLain.  *See Grancare*, 889 F.3d at 548.  At the hearing, the Court pressed counsel for Plaintiff on this issue, and Counsel represented that all the facts regarding McLain's conduct are already alleged in the Complaint.  Because Plaintiff has no additional facts to allege and the Court found the allegations in the Complaint insufficient to state a claim against McLain, the Court must conclude that amendment would prove futile, and that Plaintiff cannot possibly state a cause of action against the remaining resident Defendant.  The Court accordingly finds that McLain was fraudulently joined as a sham defendant and that her residency does not invalidate the Court's diversity jurisdiction.  The Motion to Remand must be denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Eighth Cause of Action is hereby GRANTED, and Plaintiff's Motion to Remand the case to state court is hereby **DENIED**.  The Eighth Cause of Action for workplace harassment is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: December 7, 2023

_____
**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**

8